UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DMARQUE DRIAUN DANSBY,

    Petitioner,

v.

JOHN CHRISTIANSEN,

    Respondent.

Case No. 23-13006
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1, 3, 17, 18] AND MOTION TO REMAND FOR EVIDENTIARY HEARING [20]**

---

Dmarque Driaun Dansby, incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Nos. 1, 3, 17, 18.) He challenges his jury trial convictions for first-degree home invasion, aggravated stalking, domestic violence, and being a third felony habitual offender. (*Id.*) Having reviewed the petition, the warden's response, and the state-court record, the Court concludes that Dansby's claims are without merit. Thus, the Court will DENY the petition.

Dansby also filed a motion to remand for an evidentiary hearing. (ECF No. 20.) Because there are no available grounds to grant that request, the Court will also DENY that motion.

## I.

A detailed summary of the history of this case was set forth in the Michigan Court of Appeals' opinion affirming the denial of Dansby's habeas petition in state

court. *See People v. Dansby*, No. 351034, 2022 WL 70012, at \*1 (Mich. Ct. App. Jan. 6, 2022). The Court recites an abbreviated account here.

Dansby had been involved in a relationship with Ashley Zahn with whom he had a son. They lived together for some time but Zahn and the minor child moved out after an alleged domestic abuse incident in 2015. At trial, the prosecution presented evidence that Dansby stalked Zahn between February and May 2016, including throwing a brick through her window. This culminated in an attack on May 13, 2016. On that day, Dansby forced his way into Zahn's residence, grabbed Zahn's neck, and punched her in the face. Zahn fought back with pepper spray but said Dansby continued to physically attack her. Dansby fled and a neighbor who called 911 testified that she saw him running through a side yard. An officer who responded to the scene testified that Zahn was found with a bloody nose and blood on her clothing, and looked like she had been assaulted. He also observed that the door jamb to her home was broken.

Dansby was criminally charged for the attack in Genessee County Circuit Court. He testified on his own behalf at trial and admitted visiting Zahn and their son on May 12. But he denied being at Zahn's residence and assaulting her on May 13. Dansby alleged that he was being set up or framed by the police, Zahn, and her neighbors. He argued that these were not credible witnesses and pointed to what he considered inconsistent testimony.

The jury found Dansby guilty of first-degree home invasion (MCL 750.110a(2)), domestic violence (MCL 750.81(2)), and aggravated stalking (MCL 750.411i.).

*Dansby*, 2022 WL 70012, at *1. The trial court sentenced him as a third-offense habitual offender under MCL 769.11, imposing "concurrent terms of 230 to 480 months' imprisonment for the home-invasion conviction, 55 to 120 months' imprisonment for the stalking conviction, and 93 days in jail (time served) for the domestic violence conviction." *Id.* The Court of Appeals affirmed the conviction and the Michigan Supreme Court denied leave to appeal. *Id.*; *lv. den. People v. Dansby*, 981 N.W.2d 472 (Mich. 2022).

Dansby then came to federal court seeking habeas relief. Between his initial and amended petitions (ECF Nos. 1, 3, 17, 18), Dansby raises three grounds for relief. First, he argues that his Fourteenth Amendment due process right was violated because police destroyed, withheld, suppressed, and failed to preserve potentially useful evidence. (ECF No. 1.) Second, Dansby claims that his Sixth Amendment right to effective assistance of counsel was violated because counsel failed to investigate witnesses, elicit testimony, and call witnesses during trial. (ECF No. 17.) And finally, Dansby says he was denied a fair trial because the prosecution presented testimony that it knew or should have known was perjured. (ECF No. 18.) Based on some of these claims, he asks the Court to remand the case for an evidentiary hearing. (ECF No. 20.)

## II.

The Antiterrorism and Effective Death Penalty Act sets the standard of review for federal courts to apply when considering an application for a writ of habeas corpus asserting constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

Under AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams*, 529 U.S. at 407–08). The Supreme Court has emphasized that "'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.

### A.

Dansby first alleges that he was denied his right to due process when the responding police officer, Sean Nelson, either failed to collect or directed Zahn to destroy the clothing she was wearing at the time of the assault. (ECF No. 1, PageID.14.) He argues that the clothing would have exculpated him of the crime because it would have shown that the stains on the clothing were synthetic blood placed to fabricate this charge, or alternatively, were the blood of a third-party suspect. (*Id.* at PageID.18.)

Dansby says this was a violation of the rules established in *Brady v. Maryland*, 373 U.S. 83 (1963) and *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). (ECF No. 1, PageID.14.) Under the *Brady* rule, due process is violated when the prosecution fails to turn over material exculpatory evidence to the defense. 373 U.S. at 87. Under the *Youngblood* rule, due process is violated when the government destroys or fails to preserve evidence in bad faith. 488 U.S. at 57–58. Here, Dansby's claim that Nelson failed to collect or directed the destruction of Zahn's clothing falls under the *Youngblood* rule. In addressing this claim under the state law equivalent, the Michigan Court of Appeals reasonably found that Dansby "failed to show that the evidence in question was exculpatory, or that the police acted in bad faith." *Dansby*, 2022 WL 70012, at *7.

To state a due process claim under the *Youngblood* rule, a defendant must establish:

5

(1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means.

*Monzo v. Edwards,* 281 F.3d 568, 580 (6th Cir. 2002) (citing *Youngblood*, 488 U.S. at 57). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003) (internal citations omitted). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.*

Here, the Michigan Court of Appeals relied on the testimony of officer Nelson "that it was not standard procedure to collect clothing in domestic violence complaints, as opposed to other types of cases such as sexual assault complaints." *Dansby*, 2022 WL 70012, at *7. Instead, he took photographs of the clothing that were provided to the defense. *Id.* The clothing also appeared to be contaminated as Zahn testified that she defecated on herself during the assault. *Id.* In short, the record shows that the officer followed proper procedure and did not act in bad faith. *See Monzo,* 281 F.3d 580 (explaining that even if police acted negligent or grossly negligent, that does not establish bad faith); *see also United States v. Generett*, 149 F. App'x 432, 435 (6th Cir. 2005) (rejecting bad faith argument, in part, because there was no evidence that police auction disposing of vehicle was contrary to standard department practice).

6

Nor was the exculpatory value of the blood-stained clothing apparent before its destruction. The officer on the scene observed Zahn's bloody nose and believed that was the source of the blood on her clothes. There was no evidence that anyone other than Dansby, Zahn, and their minor child were in the house at the time of the assault. *Dansby*, 2022 WL 70012, at *7. And Dansby provided no reason to think his son left the blood. As the Michigan Court of Appeals reasonably concluded, Dansby's "assertion that the clothing could have exonerated him is entirely speculative. And there is no factual support for [his] claim that the evidence, had it been preserved and produced, would have assisted [his] defense. *Id*. "Where '[t]here is no indication that there was anything exculpatory' about destroyed evidence, due process has not been violated." *See United States v. Jobson,* 102 F.3d 214, 219 (6th Cir. 1996) (quoting *United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994)).

Thus, Dansby is not entitled to habeas relief on his due process claim.

**B.**

Next, Dansby alleges that his right to effective assistance of counsel was violated where his counsel failed to investigate witnesses, elicit testimony, and call witnesses during trial. (ECF No. 17, PageID.2381.)

To establish ineffective assistance of counsel, Dansby must demonstrate that (1) his counsel's performance was so deficient that the attorney did not function as "counsel" guaranteed by the Sixth Amendment and (2) that such performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the first prong, there is a presumption that, under the circumstances, the challenged

7

action might be sound trial strategy. *Id.* at 689. And as to the prejudice prong, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

More importantly, where, as here, the state court has addressed the claim on the merits, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable —a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). So a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*

### 1.

Dansby says that his trial counsel was ineffective for failing to call blood-spatter expert Joseph Slemko to testify that the blood stains on Zahn's clothes were inconsistent with a single punch to the nose. (ECF No. 16, PageID.2344–2345.) Dansby presented an unnotarized and unauthenticated email from Slemko to the Michigan Court of Appeals (ECF No. 9-36, PageID.1709) and to this Court (ECF No. 17, PageID.2401). Dansby also contends that his trial counsel was ineffective for failing to call Jequaleon Cleaver and Jerell Clement as alibi witnesses. (ECF No. 16, PageID.2345.)

The Michigan Court of Appeals rejected these claims on the merits. Regarding the blood splatter expert, it found Dansby did not provide an expert witness affidavit showing what information a blood-splatter analysis could have provided nor did he

8

identify any other evidence in the record suggesting that a blood-splatter analysis could have been helpful to his defense. *Dansby*, 2022 WL 70012, at *9. And the court noted that "[d]ecisions on whether to call witnesses are matters of trial strategy, to which we generally defer." *Id.* at *8 (citing *People v. Payne*, 774 N.W.2d 714 (2009)). As for the alibi witnesses, the state appeals court reasoned that Dansby did not provide any witness affidavits or identify any other evidence in the record to show what testimony the witnesses would have given if they had been called to testify. *Id.* So Dansby could not establish that the failure to call these witnesses was materially prejudicial to his defense under *Strickland*. *Id.*

The Michigan Court of Appeals was not unreasonable in rejecting these *Strickland* claims. Because the e-mail from the blood splatter expert was never notarized, it could not serve as a basis for establishing ineffective assistance of counsel. *See, e.g., Clark v. Waller*, 490 F.3d at 553, 558 (unauthenticated affidavit from person whom petitioner claims should have been called as a defense witness could not support ineffective assistance of counsel claim). And this Court cannot consider even a notarized affidavit because, under 28 U.S.C. §2254(d), habeas review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *See Campbell v. Bradshaw*, 674 F.3d 578, 590 n.3 (6th Cir. 2012) (declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record). Dansby presented no evidence to rebut the presumption that his counsel's decision to forego calling the proposed expert was strategic or that the outcome of his trial would

9

have been different had this evidence been presented. Similarly, without affidavits from the alleged alibi witnesses, even assuming counsel's "less than complete" effort to investigate Dansby's alibi constituted deficient performance, *Avery v. Prelesnik*, 548 F.3d 434, 437 (6th Cir. 2008) (quoting *Strickland*, 466 U.S. at 691), the Michigan Court of Appeals nonetheless reasonably concluded that Dansby failed to show he was prejudiced by his counsel's failure to call them.

**2.**

Dansby next argues that his trial counsel was ineffective for failing to investigate the neighbor who notified Angela Craig, the person who called 911, that Dansby was at Zahn's residence. (ECF No. 17, PageID.2386.) This argument satisfies neither *Strickland* prong. First, as the Michigan Court of Appeals explained, Dansby's attorney subpoenaed the phone records related to the neighbor who contacted Craig, as well as other phone records, and that the records were received by the trial court. *Dansby*, 2022 WL 70012, at *8. So Dansby's trial counsel *did* conduct that pre-trial investigative work. Second, Dansby cannot demonstrate that these records would have made a difference in the outcome of the trial, since Craig testified that she personally saw Dansby leaving Zahn's residence after she made the initial 911 call. Moreover, the jury was aware that the neighbor was never identified and that Craig did not know the identity. *Dansby*, 2022 WL 70012, at *8.

A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been

material to his defense. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002). Dansby cannot prevail on his claim that his trial counsel was ineffective for failing to adequately investigate whether Craig had been contacted by a neighbor because he failed to show how this would have been beneficial to his defense, particularly in light of the fact that Craig herself saw Dansby leave Zahn's residence after making the 911 call. *See Martin v. Mitchell,* 280 F.3d 594, 607–08 (6th Cir. 2002) (finding no prejudice when petitioner fails to show how the additional pre-trial work would have been beneficial to his defense). He presented no evidence to either the Michigan courts or to this Court that Craig's phone records would have proven to be exculpatory. *See, e.g., Daniel v. Palmer*, 719 F. Supp. 2d 817, 829 (E.D. Mich. 2010), *rev'd sub nom. on other grds Daniel v. Curtin*, 499 F. App'x 400 (6th Cir. 2012). For these reasons, the Michigan Court of Appeals was not unreasonable in rejecting these claims.

### 3.

Next, Dansby faults his trial counsel for failing to investigate Zahn's employment records and whether any time she missed from work was related to her being injured on May 13. *Dansby*, 2022 WL 70012, at \*9. But the defense subpoenaed Zahn's employment payroll records and used those records at trial. *Id.* at \*9. The Michigan Court of Appeals found this proper, and it was not unreasonable in this conclusion. As Respondent points out, "additional evidence of . . . Zahn's employment records would not have tipped the scales in any perceivable way." (ECF No. 25, PageID.2508.)

**4.**

Regarding Dansby's broader claim that his trial counsel failed to adequately investigate all of the witnesses for perjury or to adequately impeach them, the Michigan Court of Appeals rejected Dansby's claim at length:

> In this case, the record does not support defendant's claim that defense counsel failed to engage in proper pretrial investigation. On the contrary, the record indicates that after being appointed as defendant's sixth attorney, defense counsel discussed several matters with the trial court and the prosecutor to get up to speed on the case, and requested adjournments to ensure that all records had been received and that he had time to review the file, witnesses, and defenses. The mere fact that defense counsel did not ask certain questions at trial that defendant now claims counsel should have asked does not demonstrate that defense counsel was unprepared for trial, or that he did not present a competent defense on defendant's behalf.

*Dansby*, 2022 WL 70012, at *10.

Dansby's counsel's performance was not ineffective where the record shows that his counsel carefully examined the victim and the other witnesses and in his closing argument emphasized the weaknesses in their testimony. *See Krist v. Foltz,* 804 F.2d 944, 948–49 (6th Cir. 1986); *Millender v. Adams,* 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002). "Although other attorneys might have reached a different conclusion about the value of cross-examining [the witnesses] in greater detail, counsel's strategic choice not to further cross-examine the witnesses was 'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F.3d 851, 864 (6th Cir. 2002) (quoting *Strickland,* 466 U.S. at 689). Nor has Dansby identified how additional impeachment of these witnesses would have affected the jury's decision. Choosing not to cross-examine the victim or other witnesses more

12

forcefully does not amount to ineffective assistance of counsel "particularly when the effect of further probing is so speculative." *See Jackson v. Bradshaw,* 681 F.3d 753, 765 (6th Cir. 2012).

In sum, by failing to present any evidence to the state courts in support of his ineffective assistance of counsel claim, Dansby is not entitled to an evidentiary hearing on his claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Dansby offered no evidence beyond his own assertions as to whether these witnesses would have testified and what the content of their testimony would have been. (*See generally* ECF No. 16.) Thus, his claims fail.

## C.

Finally, Dansby asserts that he was denied a fair trial because the prosecutor presented testimony he knew or should have known was perjured. (*See generally* ECF No. 18.)

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citation omitted). So too when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). Indeed, a habeas petitioner must show that a witness's statement

13

was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517–18 (6th Cir. 2000).

The Michigan Court of Appeals reasonably concluded that Dansby is not entitled to relief on this claim because he failed to show that Zahn, Craig, or any other witness committed perjury at his trial. Conclusory allegations of perjury in a habeas petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). Yet the only evidence that Dansby offers is that the preliminary examination testimony of some of the witnesses differed from their trial testimony or that their testimony differed from one another. (ECF No. 18, PageID.2432–2440.) But mere inconsistencies in a witness's testimony do not establish the knowing presentation of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or changes his story also does not establish perjury. *Malcum,* 276 F. Supp. 2d at 684 (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). And even if any witness testified falsely, Dansby points to no evidence that the prosecutor knew it was false. *See Rosencrantz v. Lafler,* 568 F.3d 577, 587 (6th Cir. 2009). Finally, as the Michigan Court of Appeals found, "[t]o the extent that the witnesses' trial testimony differed from their prior statements or testimony presented by other witnesses, there is no indication that the prosecutor sought to conceal those inconsistencies. Indeed, the record shows that the witnesses were questioned about their observations and inconsistent prior testimony and statements, and that defense counsel highlighted

14

the inconsistences in closing argument." *Dansby*, 2022 WL 70012, at \*11; *see also United States v. Ward,* 190 F.3d 483, 491 (6th Cir.1999) (rejecting claim that government witness committed perjury where "the court gave the defendants several opportunities to cross-examine and recross-examine the witnesses to bring any inconsistencies in testimony to the attention of the jury."). Plus, the corroborating evidence presented in this case would render any alleged perjury harmless error at most. *See Rosencrantz*, 568 F.3d at 588.

And to the extent Dansby claims his counsel was ineffective in handling perjured testimony, this claim likewise fails. Since Dansby failed to show that any of the witnesses committed perjury, his counsel was not ineffective for failing to make such a charge. *Brown v. Burt*, 65 F. App'x 939, 942 (6th Cir. 2003). And, as discussed, his trial counsel brought out the inconsistencies on cross-examination to attack the witnesses' credibility and reliability. *Ware v. Brewer*, 502 F. Supp. 3d 1216, 1232–33 (E.D. Mich. 2020). There is simply no basis to find that the Michigan Court of Appeals unreasonably applied the governing law in rejecting Dansby's perjury claims.

## IV.

Dansby has also filed a separate motion asking this Court to remand the case to state court for a *Ginther* hearing and to exhaust his perjury claims. (ECF No. 20.)

"Under Michigan state law, when a criminal appellant wishes to raise a claim of ineffective assistance of counsel based on facts not contained in the existing record, he must request a so-called *Ginther* hearing." *Szydlek v. Brewer*, No. 12-14670, 2016 U.S. Dist. LEXIS 156, at \*17–18 (E.D. Mich. Jan. 4, 2016). But such a request is made

15

in the Michigan Court of Appeals, not a federal habeas court. *See* Mich. Ct. R. 7.211(C)(1). Indeed, there is no basis for this Court to remand to state court a habeas case that originated in federal court. *See Smith v. Ludwick*, 08-12567, 2009 U.S. Dist. LEXIS 828, at *1 (E.D. Mich. Jan. 7, 2009).

Additionally, to the extent Dansby is seeking a remand to exhaust his state remedies for both his ineffective assistance and perjury claims, the Court already denied Dansby's previous request to stay and abey the petition to allow him to exhaust additional claims in state court. (ECF No. 14.)

Moreover, Dansby was not precluded from raising his *Brady/Youngblood*, ineffective assistance of counsel, and perjury claims. (*Id.* at PageID.2277 (permitting Dansby to include those claims in an amended habeas petition).) The Court considered them in detail and found that the Michigan Court of Appeals was not unreasonable in rejecting them.

Thus, there is no basis for Dansby's motion to remand.

## V.

For the foregoing reasons, the Court DENIES Dansby's Petition for a Writ of Habeas Corpus (ECF Nos. 1, 3, 17, 18). The Court also DENIES his motion to remand for an evidentiary hearing (ECF No. 20). The Court will issue a separate order denying a certificate of appealability.

IT IS SO ORDERED.

16

Dated: February 17, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE